# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAMES R. TAYLOR, CHARLENE
TAYLOR, JARMAUR STALLINGS,
STARLA STALLINGS, ROBIN DERISEIS,
SEAN EVANS, GARY KAPALA,
BERNARD MCNAIR, CRESTIN
GREENWOOD, WILLIE HOUSTON, JR.,
APRIL BOWEN, JO ANN LANGSTON,
and ROGER CLEVELAND, on behalf of
themselves and all others similarly
situated,

                Plaintiffs,

vs.                              Case No.  3:16-cv-159-J-32JRK

WELLS FARGO BANK, N.A. and WELLS
FARGO BANK, N.A., doing business as
America's Servicing Co.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

### I.  Status

This cause is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended

Class Action Complaint and Incorporated Memorandum of Law (Doc. No. 39; "Motion to

Dismiss Amended Complaint") and Defendants' Motion to Sever and Dismiss Out-of-State

---

[1]  "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id.  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Plaintiffs' Amended Claims and Incorporated Memorandum of Law (Doc. No. 40; "Motion to Sever"), both filed November 10, 2016. Plaintiffs filed responses in opposition to the Motions on December 23, 2016. See Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc. No. 43; "Response to Motion to Dismiss"); Plaintiffs' Opposition to Defendants' Motion to Sever and Dismiss Out-of-State Plaintiffs' Amended Claims (Doc. No. 45; "Response to Motion to Sever"). On May 18, 2017, the Honorable Timothy J. Corrigan, United States District Judge, entered an Order referring the Motions to the undersigned for a Report and Recommendation. See Order (Doc. No. 47).

## II. Background

### A. Procedural History

Plaintiffs, thirteen home buyers/borrowers residing in nine different states, initiated this case on February 18, 2016 on behalf of themselves and all others similarly situated by filing a "Complaint for Damages Under Regulation X, the Real Estate Settlement Procedurs [sic] Act, Racketeer Influenced and Corrupt Organizations Act, and for Fraudulent and Deceptive Practices" (Doc. No. 1) (emphasis and capitalization omitted). Defendants are Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo Bank, N.A., doing business as America's Servicing Co. ("America's Servicing Co."). The Complaint contained six "claims common amongst Plaintiffs," id. at 6; see id. at 6-11, and then set forth "individual claims" with respect to each individual or couple named in the Complaint, id. at 11; see id. at 11-33 (capitalization and emphasis omitted from each quotation).

On May 16, 2016, Defendants moved to dismiss the Complaint (Doc. No. 18) and also moved to sever and dismiss the out-of-state Plaintiffs' claims (Doc. No. 17). On July 13,

2016, the Court heard oral argument on Defendants' motions to dismiss and sever.  See Minute Entry (Doc. No. 32).  During that hearing, the Court made numerous observations about the overall insufficiency of Plaintiffs' Complaint, including that: 1) there were insufficient factual allegations in the purported class action (or "common amongst Plaintiffs") counts; 2) there was no separate heading and section detailing the allegations of fact showing the existence of prerequisites to a class action as enumerated in Rule 23(a) and (b) of the Federal Rules of Civil Procedure ("Rules"), in violation of Rule 4.04, Local Rules, Middle District of Florida ("Local Rules"); and 3) there were totally insufficient factual allegations to support a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

Following oral argument, the Court entered an Order ruling as follows: the motion to dismiss (Doc. No. 18) was granted; the Complaint (Doc. No. 1) was dismissed without prejudice; the motion to sever and dismiss the out-of-state Plaintiffs' claims (Doc. No. 17) was found to be moot; Plaintiffs were directed to file an amended complaint by September 13, 2016; Defendants were directed to respond to the amended complaint by November 10, 2016; Plaintiffs were directed to respond to any motion to dismiss by December 9, 2016; and all further case activity was stayed until further Order.  Order (Doc. No. 33), entered July 13, 2016.  The Court also warned:

> Although the Court did not address every argument in Defendants' Motion to Dismiss Plaintiffs' Claims (Doc. 18) at the hearing, Plaintiffs should carefully consider each of Defendants' arguments when drafting the amended complaint, particularly those that might be dispositive of some of Plaintiffs' claims, such as those related to the statute of limitations, the Rooker-Feldman doctrine, and the alleged failures to disclose claims in bankruptcy proceedings.  As stated on the record, Plaintiffs shall comply with the [Rules], [the Local Rules], and legal citation standards set forth in The Bluebook.

Id. at 2 n.1.

Plaintiffs filed the operative "Amended Class Action Complaint" (Doc. No. 38; "Amended Complaint") on September 14, 2016.[2] As noted, Defendants then filed the Motion to Dismiss Amended Complaint and Motion to Sever, to which Plaintiffs responded in opposition.

## B. Amended Complaint

In the Amended Complaint, Plaintiffs again bring claims against Defendants on behalf of themselves and all others similarly situated. See Am. Compl. at 1. Plaintiffs "and/or [the] Class Members" are individuals who "had their loans serviced by Wells Fargo or [America's Servicing Co.]" Id. at 14 ¶ 54. Plaintiffs allege that, in connection with Plaintiffs' loan modification applications, Defendants failed to follow certain procedures set forth in Regulation X, found at 12 C.F.R. Ch. X, Pt. 1024, which was "issued by the Bureau of Consumer Financial Protection to implement the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. [§] 2601 et seq. [("RESPA")]." 12 C.F.R. §1024.1. Plaintiffs further allege violations of RICO.

There are three counts set forth in the Amended Complaint. In Count I, Plaintiffs allege a "Violation of the Notice Requirements of Regulation X." Am. Compl. at 14 (capitalization omitted). In this Count, Plaintiffs claim that Defendants were required to send a "Post-Foreclosure Referral Notice . . . to borrowers to notify them of their options to avoid foreclosure." Id. at 14 ¶ 56 (citation omitted); see 12 C.F.R. Pt. 1024, App'x MS-4 (Model

---

[2]     Prior to the September 14, 2016 filing of the operative Amended Complaint (Doc. No. 38), Plaintiffs on September 13, 2016 timely filed an initial version of it (Doc. No. 36). The Clerk advised them to re-file because of problems with the attachments and spacing requirements.

Clauses for the Written Early Intervention Notice). According to Plaintiffs, "Defendants failed to send all Plaintiffs and Class Members the required Post Foreclosure Referral Notice within the time prescribed by Regulation X." Am. Compl. at 14-15 ¶ 60. Then, "[d]espite the fact that Defendants failed to send this Notice, the Defendants, with respect to many Plaintiffs and Class Members, refused to review applications for modification based on the false allegation that the application was submitted too late." Id. at 15 ¶ 61. Plaintiffs allege that "Defendants' misconduct with respect to the Post Foreclosure Referral Notice leaves homeowners damaged in terms of protracted and expensive loss mitigation, added late fees, penalties and attorney fees, and in many cases the loss of their homes and equity therein." Id. at 15 ¶ 62.

Count II is titled "Loan Modification and Loss Mitigation Review," id. at 15 (capitalization omitted), and it alleges numerous violations of Regulation X in connection with Defendants' review of Plaintiffs' loan modification applications. According to Plaintiffs:

66. Plaintiffs have all submitted Requests for Mortgage Assistance, also known as loan modification applications, to Wells Fargo or [America's Servicing Co.]

67. When a borrower submits an application more than forty-five (45) days before a foreclosure sale[,] Defendants are required, pursuant to 12 C.F.R. 1024.41(b)(2), to notify the borrower or any additional required documents within five (5) business days.

68. If Defendants fail to provide the notice required by 12 C.F.R. 1024.41(b)(2) then the homeowners' application is supposed to be treated as "facially complete" pursuant to 12 C.F.R. 1024.41(c)[(2)](iv).

69. Defendants are supposed to provide homeowners with a reasonable due date for any additional documents.

70. The Plaintiffs and Class Members in the instant case did not receive timely notice of the requirement for additional documents and information.

71. Defendants failed to provide Plaintiffs and Class Members with a reasonable time for the submission of missing documents.

72. Defendants either intentionally or negligently waited until the Plaintiffs or Class Members called them for an update to advise them that additional documents were required.

73. Defendants failed to provide Plaintiffs and Class Members with the benefits of "facially complete" status. Defendants initiated and advanced foreclosures against Plaintiffs and Class Members in violation of Regulation X.

74. If a homeowner submits a complete application at least thirty-seven (37) days before a foreclosure sale Defendants are required, pursuant to 12 C.F.R. 1024.41(c)(1)(i), to complete the loss mitigation review within thirty (30) days.

75. Defendants failed to complete the loss mitigation reviews for Plaintiffs and Class Members within the prescribed thirty (30) day period.

76. When a loss mitigation review is completed Defendants are required, pursuant to 12 C.F.R. 1024.41(c)(1)(ii) to provide the results in writing, including a detailed explanation of the reasons why the homeowner was denied for any option or program.

77. The Notice required by 12 C.F.R. 1024.41(c)(1)(ii) must also notify the homeowner of the right to appeal the decision.

78. Defendants, with respect to many Plaintiffs and Class Members, provided only verbal notice of the loss mitigation decision.

79. When Defendants did send written notice the notice did not contain detailed explanations of the reasons why the homeowner's application was denied. Defendants used vague and ambiguous reasons such as "investor guidelines[,"] prior modification default, and that they were allegedly "unable to create an affordable payment" with no explanation as to why and no details regarding the alleged guidelines.

80. By issuing denials of applications based on the reason enumerated in Paragraph 94 [(referencing denials based on the HAMP provisions when borrowers allegedly qualified for modifications under the HAMP provisions)], as well as others not specifically stated, Defendants failed to properly evaluate Plaintiffs and Class Members for all options that were available to save their homes.

81. The Plaintiffs and Class Members in the instant case were either not given notice of the right to appeal or they were not provided with the opportunity to appeal the loss mitigation decision before a foreclosure sale was completed.

82. If a borrower submits an application for loss mitigation[,] a servicer is precluded from seeking a final judgment of foreclosure or an order of sale pursuant to 12 C.F.R. 1024.41(g).

83. Defendants, with respect to many Plaintiffs and Class Members, violated 12 C.F.R. 1024.41(g) by filing motions for final judgments of foreclosure, filing notices of sale in non-judicial states, and otherwise advancing foreclosure against Plaintiffs and Class Members.

84. Defendants improperly denied applications from Plaintiffs and Class Members based on Defendants' failure to consider extensions of the loan term.

85. Defendants improperly denied applications from Plaintiffs and Class Members based on failure to consider principal and/or interest rate reductions.

86. Defendants improperly denied applications from Plaintiffs and Class Members based on failure to consider all loss mitigation options, including, but not limited to, Tier II of the HAMP program.

87. Defendants intentionally protract borrowers' loss mitigation reviews to increase late fees, penalties and other charges. Defendants receive the added benefit of being able to charge interest on these additional fees when they are added to the principal of the modified loan.

88. Defendants, in the case of some Plaintiffs and Class Members, refused to review successors, heirs and beneficiaries for the right to assume the loan of a deceased borrower.

89. Plaintiffs and Class Members suffered damages as a result of Defendants' illegal pattern and practice referenced herein. Some Plaintiffs lost their homes to foreclosure. Other Plaintiffs suffered actual and consequential damages.

Am. Compl. at 15-18 ¶¶ 66-89.

Count III alleges a "Violation of [RICO]." Am. Comp. at 18 (capitalization omitted). In support of this count, Plaintiffs allege that "Defendants engaged in a pattern and practice of repeatedly sending fraudulent correspondence to homeowners denying applications for

loan modification and loss mitigation when the Defendants knew that these homeowners, in fact, qualified for foreclosure alternatives." Id. at 19 ¶ 92. Plaintiffs then provide examples of "hundreds of thousands" of denials based on broad categories such as "'investor guidelines,'" "HAMP provisions," "imputed income figures that Defendants knew to be incorrect," and other "invalid reasons." Id. at 19-20 ¶¶ 93-96. Plaintiffs contend that the denials were "intentional[], to increase the amount of the arrears and penalties and afford the opportunity to charge interest on this increased principal," and "to liquidate properties in which homeowners had substantial equity." Id. at 20 ¶¶ 97-98.

In addition to bringing claims under Regulation X and RICO, the Amended Complaint sets forth certain allegations about a Consent Order ("Consent Order") entered into between Defendants and the Office of the Comptroller of the Currency ("OCC") in April 2011, after an investigation of Defendants' alleged "predatory lending and fraudulent foreclosure practices." Id. at 5 ¶ 26, 6-9 ¶¶ 27-42. As part of the Consent Order, "Defendants agreed to participate in the 'Independent Foreclosure Review'" ("IFR"), which "was comprised of an internal audit, followed by a third party audit, and finally a ruling by the OCC." Id. at 6 ¶ 28. The independent auditor "found violations in a significant percentage of [Defendants'] files" and required Defendants to conduct an "internal audit of its customer files for violations in the origination and servicing of residential mortgage loans, including foreclosure practices." Id. at 6 ¶ 30. Plaintiffs contend that "[d]espite appearing to cooperate with these corrective programs, in 2012 Wells Fargo published an internal policy for Default Operations that instructed employees, agents and attorneys as to better methods for the production of false supporting documentation." Id. at 6 ¶ 31 (citing id. at Ex. A (Manual)). Eventually, "[i]n June

2012[,] the OCC published a Remedial Framework designed to provide redress for homeowners who had been harmed by Defendants' Practices." Id. at 6 ¶ 32 (citing id. at Ex. B (OCC Remedial Framework)).

The Amended Complaint also discusses a "National Mortgage Settlement Agreement" entered into in April 2012 between Wells Fargo and the United States Department of Justice in Case No. 1:12-cv-361 (D.D.C. 2012). Am. Comp. at 6 ¶ 33. According to the Amended Complaint, "The National Mortgage Settlement Agreement involved a stipulation by Defendants to certain origination and servicing violations regarding residential mortgage loans," and "a remedial framework was incorporated into the . . . Agreement that [was] designed to make homeowners that had done business with Defendants whole." Id. at 7 ¶ 34.

The June 2012 OCC Remedial Framework had "the same intention" as the one set forth in the National Mortgage Settlement Agreement. Id. at 7 ¶ 35. Pursuant to Section 5 of the OCC Remedial Framework, "in the event that foreclosure was completed prior to a loss mitigation decision, or based on an erroneous loss mitigation decision, . . . the injured borrower would be entitled to damages of Five Thousand Dollars ($5,000) if the sale could be rescinded, and Fifteen Thousand Dollars ($15,000) plus equity, in the event that the foreclosure sale could not be reversed." Id. at 7 ¶ 36 (citing id. at Ex. B).

In January 2013, the Consent Order with OCC was amended to provide that Wells Fargo must "maintain sufficient staff and . . . sufficiently train personnel to make correct decisions and calculations with respect to loss mitigation review." Id. at 7 ¶ 37. Then, in

January 2014, "Regulation X . . . was amended to provide a detailed process for the manner in which a servicer must conduct a loss mitigation review." Id. at 7 ¶ 38.

The Amended Complaint alleges:

40. Wells Fargo, throughout this period, has attempted to avoid its commitments and to derail borrowers from pursuing loan modifications and loss mitigation by:

> a. Developing policies designed to delay loan modification reviews to discourage consumers from seeking modification and to increase arrears and penalties.
>
> b. Developing policies designed to create fraudulent documentation to establish false standing in foreclosure actions.
>
> c. Ignoring federal loss mitigation rules by "dual tracking," i.e. simultaneously advancing foreclosure while a borrower is in review for loan modification.
>
> d. Providing false and misleading statements to borrowers regarding the status of their loan modification review and sale date postponements.
>
> e. Refusing to rescind foreclosures that Wells Fargo knows were completed illegally.
>
> f. By illegally and improperly increasing escrow expenses as a means to disqualify borrowers from approval for loan modification.

Id. at 8 ¶ 40.

Plaintiffs do attempt in the Amended Complaint to comply with Local Rule 4.04 and the Court's directives by including "Class Action Allegations." Id. at 9 (emphasis and some capitalization omitted). Within those allegations, Plaintiffs propose their class as follows:

> All homeowners whose loans were serviced by Defendants, Wells Fargo and [America's Servicing Co.] that did not receive notice that they had options to help them avoid foreclosure, that did not receive a timely, fair and accurate loss mitigation review, and whose homes were sold at foreclosure before a review could be completed or based on an application that was denied erroneously.

Id. at 9 ¶ 43.[3] Plaintiffs also make allegations as to numerosity, predominance of common questions of law and fact, typicality, adequacy, and superiority. Id. at 10-14 ¶¶ 46-52.

As relief, Plaintiffs seek: 1) "actual damages for the loss of Plaintiffs' homes based on the OCC Remedial Framework of Fifteen Thousand Dollars ($15,000) plus lost equity per Plaintiff"; 2) "actual damages for protracted and improper loss mitigation review based on the OCC Remedial Framework of Five Thousand Dollars ($5,000) per Plaintiff"; 3) "statutory damages under [12 U.S.C. § 2605(f)(2) (RESPA)] of One Million Dollars ($1,000,000) for the Class"; 4) "statutory and treble damages for violations of RICO [allowed by 18 U.S.C. § 1964(c)]"; 5) "attorney's fees"; and 6) costs of this litigation." Id. at 20-21 (Wherefore clause).

### III.  Argument of the Parties

**A.  Motion to Dismiss Amended Complaint**

In the Motion to Dismiss Amended Complaint, Defendants contend:

> Although Plaintiffs have now included purported "class action allegations" in their Amended Complaint, they did not and cannot correct the fundamental flaws in the claims that they seek to assert. Rather than engage in a careful analysis of whether Plaintiffs could in fact maintain a legally cognizable cause of action, Plaintiffs opted to merely delete the vast majority of the facts from the Amended Complaint. Perhaps this is because the inclusion of such facts would establish that most, if not all, of the Plaintiffs cannot maintain any of the claims asserted in the Amended Complaint due to the Rooker-Feldman doctrine, statute of limitations, judicial estoppel or other dispositive matters of law as set forth in Defendants' motion to dismiss the initial Complaint. Plaintiffs' thinly veiled effort to survive a motion to dismiss still fails because the Amended Complaint again does not state any claim for which Plaintiffs are entitled to relief and should be dismissed for multiple reasons.

Motion to Dismiss Amended Complaint at 2 (internal citation and footnote omitted).

---

[3]     Plaintiffs plead that "[t]he Class definition is subject to amendment as needed." Am. Compl. at 9 ¶ 43.

As for the reasons why Plaintiffs do not state a claim for relief, Defendants argue as follows. As to Count I, Defendants point out that this Count "is substantially the same as Claim One of the 'Common Claims' asserted in Plaintiffs' initial Complaint—other than Plaintiffs' addition of a summary allegation that 'Plaintiffs and/or Class Members in the instant case had their loans serviced by Wells Fargo or [America's Servicing Co.]'" Id. at 4 (citations omitted). Defendants argue, as they did initially, that "the law simply does not permit or support the cause of action alleged in Count I of the Amended Complaint." Id. at 5.

As to Count II, Defendants first observe that this Count "appears to be little more than an amalgamation of claims two through five of the 'Common Claims' asserted in Plaintiffs' initial complaint, all of which purported to assert claims under Regulation X." Id. (citations omitted). "However," argue Defendants, "four patently deficient claims do not somehow transform into a single legally cognizable cause of action simply by lumping together legal conclusions with minimal factual allegations." Id. Defendants then detail why they contend that Count II fails to state a plausible claim under the various sections of Regulation X that are implicated by Count II. Id. at 5-13.

As to Count III, Defendants argue that this RICO claim "is the exact same claim that Plaintiffs attempted to assert as the sixth claim of the 'Common Claims' in Plaintiffs' initial Complaint." Id. at 13. Defendants contend that the "RICO claim is devoid of any facts supporting its bare legal conclusion that Defendants 'engaged in a pattern and practice of repeatedly sending fraudulent correspondence to homeowners denying applications for loan modification.'" Id. at 14 (citing Am. Compl. at 19 ¶ 92). Further, according to Defendants,

-12-

"Plaintiffs' claim does not contain any of the required factual allegations that Defendants serviced their loans or that Plaintiffs submitted a loan modification application to Defendants, much less received any correspondence denying the application." Id.

Finally, as to Plaintiffs' class allegations, Defendants submit that the "Amended Complaint wholly fails to state any legally cognizable cause of action whether on an individual or class basis. In addition, Plaintiffs fail to adequately allege any entitlement to maintain a class wide action." Id. For these reasons, Defendants argue that the "class allegations must be dismissed," id. at 14 (emphasis and capitalization omitted), along with the Amended Complaint in its entirety, id. at 14-15. Defendants urge for dismissal with prejudice. Id. at 15.

Responding, Plaintiffs contend as to Count I that although "Section 1024.39 does not provide specific remedies or redress," the count is really "more analogous to . . . cases that affirm a borrower[']s right to seek damages for Regulation X violations." Response at 8. Plaintiffs argue that "Defendants' violation of Section 1024.39(b) is a violation of RESPA itself and, as such, renders Defendants liable for statutory and actual damages." Id.

As to Count II, Plaintiffs allege they have set forth sufficient facts to show "that they suffered actual damages, i.e. the loss of their homes or increased loan principal by virtue of exacerbated foreclosure and servicing fees, and that Defendants engaged in a pattern and practice of intentionally violating the provisions of Regulation X." Id. Plaintiffs also claim they have "pled with great specificity as to how Defendants failed to meet their obligations under Regulation X." Id. at 9.

As to Count III, Plaintiffs argue they "have specifically alleged that Defendants failed to provide homeowners with proper notice of programs to help them avoid foreclosure, and that Defendants protract and discourage borrowers from pursuing loan modification." Id. at 13. According to Plaintiffs, "If the Court must accept as true that Defendants have routinely and repeatedly engaged in these illegal activities with respect to hundreds of thousands of homeowners, as alleged in the Amended Complaint, then the Court must conclude that Plaintiffs have sufficiently pled their RICO claims." Id.

Regarding the class allegations, Plaintiffs contend that "[i]n truth there are minute distinctions amongst Class Members." Id. According to Plaintiffs, "[n]ot every member of the putative class has lost their home to foreclosure, not every member of the putative class received a decision on their loan modification application, and not every member of the putative class is an heir or beneficiary of a deceased borrower." Id. at 13-14. Plaintiffs defend their proposed class by asserting that "Defendants have violated Regulation X of RESPA with respect to every putative class member." Id. at 14.

Plaintiffs also address the Rooker-Feldman doctrine, the statute of limitations, and the bankruptcy proceedings, id. at 11-12, about which the Court warned in dismissing their initial Complaint.

## B. Motion to Sever

In the Motion to Sever, Defendants contend that the "[t]hirteen individual Plaintiffs, as borrowers residing in nine different states," are misjoined, and all but Mr. and Ms. Taylor (the only Florida residents) should be severed and dismissed. Motion to Sever at 1, 11. According to Defendants, "Plaintiffs' styling of the Amended Complaint as a 'class action' and

inclusion of purported 'class action allegations' is an obvious attempt to conceal that their claims are misjoined and may not be brought together in a single action." Id. at 1-2. In support of their requested relief, Defendants argue that: 1) "Plaintiffs' claims do not arise out of the same series of transactions or occurrences"; 2) "Plaintiffs' claims do not involve common questions of law or fact"; and 3) "Severance and dismissal of Plaintiffs' claims furthers judicial economy." Id. at 5, 8, 9 (emphasis and capitalization omitted).

Responding, Plaintiffs boldly contend that "Defendants' assertion[] that Plaintiffs' claims are too distinct to be brought as a class action . . . is ludicrous." Response to Motion to Sever at 2. Plaintiffs go on:

> The fact that some class members may have submitted their applications at different times, on different dates and in different states is irrelevant. The fact that some class members lost their homes while others suffered lost equity or other financial injury only speaks to the extent of the injury suffered and not to the analysis required for the claims. To review these members' claims requires that the Court interpret a single regulation. Defendants have been involved in class action litigation with respect to their illegal practices for forced-placed insurance, fraudulent account openings and fraudulent broker price opinions. All of these cases involved class members with different loans in different states. In this regard Defendants' application for severance is knowingly spurious.

Id. at 2-3. Plaintiffs argue that the request for severance and dismissal is "moot" given that they are pursuing "a class action and not a mass joinder." Id. at 6. Plaintiffs also repeat their class action allegations made in the Amended Complaint in an effort to show that "[c]lass certification is . . . proper and severance should be denied." Id. at 9-12, 10.[4]

## IV. Discussion

---

[4]    Plaintiffs also contend that the Motion to Sever should be denied based on Defendants' failure to comply with Local Rule 3.01(g). Response to Motion to Sever at 1-2.

This issues raised in the Motions are somewhat intertwined, so the undersigned addresses them together.

## A. Legal Framework

On a motion to dismiss, the Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotation and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683-84 (11th Cir. 2001) (internal quotation and citation omitted).

A class action is appropriate only when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). A class action may be brought if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class;

or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

The Court must determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A); see Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1279 (11th Cir. 2009). In addition, the Court may issue an Order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

With respect to class allegations at the pleading stage, "'Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" Lumpkin v. E.I. Du Pont de Nemours & Co., 161 F.R.D. 480, 481 (M.D. Ga. 1995) (quoting Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982)). "'Although in some cases the district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations.'" Id. (quoting Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985)). "'Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.'" James D. Hinson Elec. Contracting Co. v. AT&T Servs., Inc., No. 3:13-cv-29-J-32JRK, 2014 WL 1118015, at *3 (M.D. Fla. Mar. 20, 2014) (unpublished) (quoting MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co., 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010)). "'Dismissal at the pleading stage, however, is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'" Id. (emphasis omitted) (quoting Lawson v. Life of the South Ins. Co., 286 F.R.D. 689, 695 (M.D. Ga. 2012)).

Regarding misjoinder, Rule 20 provides:

(a) Persons Who May Join or Be Joined.
    (1) Plaintiffs.  Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ P. 20(a)(1) (emphasis omitted). Although "[m]isjoinder of parties is not a ground for dismissing an action," a court has broad discretion to sever claims and "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

"In determining whether claims arise from the same series of transactions or occurrences, the logical relationship test is applied." Barber v. Am.'s Wholesale Lender, 289 F.R.D. 364, 367 (M.D. Fla. 2013) (citing Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010)); see also Republic Health Corp. v. Lifemark Hosps. of Fla., 755 F.2d 1453, 1455 (11th Cir. 1985). The logical relationship test asks if "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights" supporting the other claim. Republic Health Corp., 755 F.2d at 1455 (quotation and citation omitted).

> In other words, there is a logical relationship when the same operative facts serve as the basis of both claims. Only claims that do not arise from common operative facts are not logically related. The logical relationship standard is a loose one which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits.

Barber, 289 F.R.D. at 367 (internal quotations, citations, and alterations omitted). Even if joinder under Rule 20 is technically appropriate, the Court enjoys broad discretion to sever based on "considerations of judicial economy, case management, prejudice to parties, and fundamental fairness." Id.

Regarding the interplay between the Rules at issue,

-19-

> [T]he Rule 20 inquiry is distinct from that under Rule 23, and a ruling against the plaintiffs on the latter in no way suggests (much less mandates) a like outcome with respect to the former. Stated differently, there is no predomination prerequisite for joinder of multiple plaintiffs' claims, and Rule 20 contemplates a much lower threshold for allowing plaintiffs' claims to proceed to trial together than is required by Rule 23 for class certification. The touchstone of the Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did.

Fisher v. Ciba Specialty Chemicals Corp., 245 F.R.D. 539, 542 (S.D. Ala. 2007).

## B. Analysis

The undersigned first recommends a finding that Plaintiffs' claims are subject to dismissal under Rule 12(b)(6), but that Plaintiffs should be permitted one final opportunity to amend in an attempt to state (a) viable claim(s). Second, the undersigned recommends a finding that the purported class action is not viable, and that with any further amendment of the complaint, Plaintiffs should not be permitted to plead a class action. Third and finally, although severance of all out-of-state Plaintiffs' claims may be appropriate later, for now, the undersigned recommends a finding that the Motion to Sever is moot. The reasons for these recommendations follow.

As to Plaintiffs' failure to state a claim, Defendants correctly observe that Plaintiffs have removed many of the original factual allegations that were set forth in the initial Complaint, especially the ones that explain each homeowner's individual situation. It is unclear why Plaintiffs did so—they represent that they deleted the "individual allegations" from the Complaint because the Court pointed out during the hearing that their pleading was "inherently flawed." Response to Motion to Sever at 6-7. But Plaintiffs' attempt to plead a cognizable class action has caused them to cast such a broad net that there are not enough

facts alleged to support the causes of action they bring.  For some examples, there are no dates pertaining to Plaintiffs' loans or modification applications, and there are no details about their circumstances.  The Amended Complaint does not even specify which Defendant allegedly serviced which loans, see Am. Compl. at 14 ¶ 54, 15 ¶ 65, and at least Count I leaves open to interpretation whether all Plaintiffs and purported class members even had any loan serviced by either Defendant, see id. at 14 ¶ 54 (stating that "[a]ll of the Plaintiffs and/or Class Members in the instant case had their loans serviced by Wells Fargo or [America's Servicing Co.]") (emphasis added).  In addition, with respect to Count II, the facts that Plaintiffs do plead are so broad that they could encompass just about anyone who has ever had a problem with a loan modification application submitted to Defendants.  Further, Count III is almost identical to the original RICO claim, despite the Court warning that Plaintiffs fell woefully short of pleading a plausible RICO claim.  See Almanza, 851 F.3d at 1066-75 (discussing RICO pleading requirements).  And Plaintiffs do not even allege in the RICO claim that they had their loans serviced by Defendants.  In short, Plaintiffs' allegations have not "nudge[d] the claim 'across the line from conceivable to plausible.'" Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260-61 (11th Cir. 2009) (quoting Twombly, 550 U.S. at 555).

As to the class allegations, this is now the second round of pleading, and Plaintiffs have been warned about the caliber of work required to bring a class action of this magnitude.  Yet, it is clear from the face of the Amended Complaint that Plaintiffs will be unable to maintain a class of the type they seek to bring.  The proposed class definition is:

> All homeowners whose loans were serviced by Defendants, Wells Fargo and [America's Servicing Co.] that did not receive notice that they had options to

help them avoid foreclosure, that did not receive a timely, fair and accurate loss mitigation review, and whose homes were sold at foreclosure before a review could be completed or based on an application that was denied erroneously.

Am. Compl. at 9 ¶ 43. Inasmuch as the "proposed class definition refers to an indefinite number of plaintiffs, over an unspecified time period, without any reference to the applicable . . . statutes of limitations for the separate causes of action," it is too "vague, indefinite, and overbroad." Oginski v. Paragon Properties of Costa Rica, LLC, 282 F.R.D. 672, 677-78 (S.D. Fla. 2012). In addition, the requirement of a foreclosure set forth in the above class definition is inconsistent with Plaintiffs' allegation in Count I that Defendants' conduct left them "damaged in terms of protracted and expensive loss litigation, added late fees, penalties and attorney fees, and in many cases the loss of their homes and the equity therein," Am. Compl. at 15 ¶ 62 (emphasis added), and in Count II that only "[s]ome Plaintiffs lost their homes to foreclosure" while "[o]ther Plaintiffs suffered actual and consequential damages," id. at 18 ¶ 89 (emphasis added). Further, the proposed definition evidently blends Counts I and II, and it is unclear whether Count III would even be implicated by it. Thus, recognizing that this is an extreme remedy at this stage, the undersigned finds it is appropriate to recommend dismissal of the class allegations as well.

Although Defendants seek dismissal of the entire Amended Complaint with prejudice, the undersigned recommends that the proper course is to dismiss without prejudice. The individual Plaintiffs should be permitted one final opportunity to replead in an attempt to state viable claims. Plaintiffs should not, however, be permitted to replead the class allegations,

because given the history of this matter and the attempts thus far, any further attempts would be futile. See Fed. R. Civ. P. 23(d)(1)(D).[5]

As to Defendants' request to sever and dismiss all out-of-state Plaintiffs, the Court previously found this issue to be moot in light of dismissing the Complaint. The Amended Complaint is devoid of facts that show each Plaintiff's circumstances. Thus, while the undersigned is skeptical about the case moving forward with all thirteen named Plaintiffs, the undersigned cannot say with certainty at this point that they should be severed. Accordingly, the Motion to Sever should be deemed moot.[6]

## V. Conclusion

In accordance with the foregoing, it is

**RECOMMENDED THAT**:

1.      Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Incorporated Memorandum of Law (Doc. No. 39) be **GRANTED** to the extent that the entire Amended Complaint should be **DISMISSED without prejudice**.

2.      Plaintiffs be permitted to file a second amended complaint repleading **only** individual claims within **fourteen (14) days** of the entry of an Order on the Motion.

---

[5]      Defendants' other arguments made in support of their request for dismissal need not be addressed until the Court has a complaint before it that has the necessary facts and is appropriately pared down. The same is true of any potential problems with Rooker-Feldman, the statute of limitations, and bankruptcy proceedings (that Defendants elected not to seriously raise for this round of motion practice).

[6]      Obviously, Defendants should be free to renew the Motion to Sever upon reviewing any forthcoming second amended complaint.

3.      Defendants' Motion to Sever and Dismiss Out-of-State Plaintiffs' Amended Claims and Incorporated Memorandum of Law (Doc. No. 40) be found **MOOT**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on August 8 , 2017.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record